No. 13436

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

------------------------

WILLIAM J. LEARY,

            Claimant and Appellant,

    -vs-

THE ANACONDA COMPANY, Employer,
       and
THE ANACONDA COMPANY,

            Insurer and Respondent.

------------------------

Appeal from: Workers' Compensation Court
             Honorable William E. Hunt, Judge

Counsel of Record:

    For Appellant:

        Greg J. Skakles argued, Anaconda, Montana

    For Respondent:

        Stephen M. Williams argued, Butte, Montana

------------------------

                    Submitted: January 30, 1978
                    Decided: FEB 22 1978

Filed: FEB 22 1978

_Thomas J. Kearney_
                          Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court:

Claimant William J. Leary suffered a myocardial infarction at approximately 12:30 p.m., December 11, 1974. At the time of the attack, claimant was employed as an electrician by the Anaconda Company at its plant in Anaconda, Montana. Claimant submitted a workers' compensation claim shortly thereafter; it was denied by his employer. On November 18, 1975, claimant filed a petition for hearing with the Workers' Compensation Division requesting a determination of the compensability of the claim. He further requested costs, attorney fees, and the penalty for the employer's refusal to pay compensation prescribed by section 92-849, R.C.M. 1947.

Hearing on the petition was held on January 21, 1976, in the Workers' Compensation Court. On May 24, 1976, the Court entered its findings of fact and conclusions of law denying the claim in its entirety, on the basis that claimant failed to demonstrate his heart attack resulted from unusual strain while engaged in work activity. Claimant appeals.

At the time of his heart attack, claimant was 53 years of age and had been employed as an electrician by the Anaconda Company for 20 years.

For a period of four to five years prior to the heart attack, claimant worked a job known as the "swing job". Each week claimant worked two days at the smelter stack substation connecting and disconnecting electrical switches; two days were spent at the main substation taking meter readings and compiling reports, and one day he worked in plant maintenance. While

engaged in plant maintenace, claimant was available for work wherever an electrician was needed at the smelter.

On December 11, 1974, while working plant maintenance, claimant and his partner, Thomas Brebrick, were sent to the old phosphate plant to disconnect two 2,300 volt switches. The old phosphate plant had not been/operation for some time/to December 11, 1974, and was unheated. The temperature in the building was approximately 30° to 35° F. and claimant was wearing heavy clothing.

In order to reach the switches, claimant and Brebrick climbed three to four flights of stairs. In the process of obtaining lighting equipment and ascertaining that the power was shut down prior to disconnection of the switches, claimant and Brebrick ascended and descended the stairs several times.

The switches were on wheels enabling them to be moved. To move the switches, claimant and Brebrick lifted them over pieces of angle iron fastened to the front of the wheels. Estimates of the weight of the switches ranged from 100 to 300 pounds, to a maximum of 800 pounds.

The work at the phosphate plant was completed shortly after 11:00 a.m. Claimant experienced no ill feeling at this time. Claimant and Brebrick returned to the foundry with their equipment and prepared for lunch. At approximately 12:30 p.m., after finishing lunch, claimant began to experience a sensation of inability to relax and, later, indigestion and pressure on his arms. Claimant returned to the job, but rested until his shift ended at 3:00 p.m. Claimant then drove home and retired for the evening. The following morning, claimant was examined by Dr. Huffman at Community Hospital in Anaconda. The condition

was diagnosed as a myocardial infarction, and claimant was immediately hospitalized. Claimant remained in the hospital for fourteen days. Dr. Huffman treated claimant until March 17, 1975, when claimant was released to return to work.

Following his release, claimant submitted his claim for compensation. This action ensued from the denial of that claim.

Claimant raises several issues on appeal. Critical to the resolution of this case is the determination of whether claimant's heart attack resulted from work related stress or strain. Section 92-418(1), R.C.M. 1947.

In its findings of fact and conclusions of law, the Workers' Compensation Court found:

> "That according to medical evidence, the heart attack suffered over one and one-half hours after the cessation of work activity and after the claimant had eaten lunch, the work activity is not related to the heart attack."

The Workers' Compensation Court thereupon concluded, as a matter of law, that claimant had not proved by a preponderance of the evidence that the job activity was the cause of the heart attack.

The findings and conclusions demonstrate that, in determining the lack of causal relationship, the Workers' Compensation Court relied almost exclusively upon a letter submitted by Dr. Walter J. Lewis III, a Missoula cardiologist, who examined claimant some two months following the heart attack. The letter was written primarily as a response to certain hypothetical questions posed to claimant's physician, Dr. Huffman, in the deposition of the latter.

Dr. Huffman indicated in his deposition and in other documents before the Workers' Compensation Court, that he found a causal relationship between the strenuous work activity involved

- 4 -

in climbing numerous flights of stairs and lifting heavy electrical switches, and the heart attack. However, the hypothetical questions posed, although assuming virtually all the relevant facts produced at the subsequent trial, established no time reference between the work activity and the heart attack. That is, the hypotheticals refer to the symptoms of the attack occurring "shortly after the cessation of work activity."

Dr. Lewis, in commenting on the hypothetical questions, indicates the time period elapsing between the cessation of work activity and the onset of symptoms is critical. He states if the heart attack occurred within one-half hour of the cessation of work, he could state the two were causally related. However, if the heart attack, as here, occurred one and one-half hours following the completion of the activity, they would not be causally related. We note in this regard that neither physician testified at the January 21 hearing.

While the findings and conclusions refer to and appear to be based upon the letter of Dr. Lewis, nowhere is any reference made to the medical opinion of Dr. Huffman. We are unable to ascertain from the findings and conclusions the basis for or reasoning behind the rejection of such opinion.

Upon a thorough review of the record, we therefore conclude there is insufficient medical testimony to support the findings and conclusions of the Workers' Compensation Court. The findings and conclusions are vacated and the cause is remanded to the Workers' Compensation Court with directions that additional medical testimony regarding the heart attack be taken.

John Conway Morrison
Acting Chief Justice

- 5 -

We Concur:

_Gene B Daly_

_Frank I. Haswell_

Justices.